UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARY JANE ALLBAUGH,

    Plaintiff,

  v.

PERMA-BOUND, a division of Hertzberg-New-Method, Inc., an Illinois corporation; JIM Q. ORR and JANE DOE ORR, and the marital community comprised thereof,

    Defendants.

CASE NO. C08-5713-JCC

ORDER

This matter comes before the Court on Defendant Perma-Bound's Motion to Compel Arbitration (Dkt. No. 17), Plaintiff Mary Jane Allbaugh's Response in opposition (Dkt. No. 22), Defendant's Reply (Dkt. No. 29), and Plaintiff's Surreply (Dkt. No. 37). The Court has carefully considered these papers and their supporting declarations and exhibits, as well as the balance of pertinent materials in the case file. Having determined that oral argument is not necessary, the Court hereby finds and rules as follows.

## I.    BACKGROUND

Defendant Perma-Bound is an Illinois company in the business of replacing a book's stock cover and binding with more durable materials for use in schools and libraries. (Young Decl. ¶ 3 (Dkt. No. 18).) Beginning in approximately 1980, Plaintiff worked as a sales representative for

ORDER - 1

Defendant in the State of Washington. (Allbaugh Decl. ¶¶ 4, 5 (Dkt. No. 23).) In January 2007, Plaintiff's attorney sent a written complaint to Defendant and its President, Jim Q. Orr, alleging that Defendant had misclassified Plaintiff as an independent contractor instead of as an employee, thereby depriving Plaintiff of certain benefits and wages. (*Id*. ¶ 14 (Dkt. No. 23).) Plaintiff also complained that Defendant discriminated against her on the basis of her age and gender. (*Id*.) In particular, Plaintiff argued that Defendant had discriminatorily reduced her sales territory while expanding the territories of younger representatives. (*Id*. at 12–14.)

By letter dated June 1, 2007, Orr notified all sales representatives of the Perma-Bound product line that the company would thereafter require that representatives enter a Manufacturer's Representative Agreement ("MRA") in order to continue to sell Perma-Bound products. (6/1/07 Orr Letter (Dkt. No. 18 at 4).) The letter read, in pertinent part, as follows:

> The [MRA] has been drafted to solidify your relationship as an independent contractor for Perma-Bound Books. We feel the contract is in your best interest, as well as the company's. The contract, renewable January 1, 2008, should be returned in the enclosed postage paid envelope within 7 working days of receipt. Failure to return the signed contract will result in the immediate loss of the Perma-Bound line.

(*Id*.) The MRA contained, among other things, a section governing "DISPUTES." (MRA § 12 (Dkt. No. 18 at 15).) That section included a provision governing the resolution of disputes, which specified, in pertinent part, that:

> Any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof, shall first be submitted for amicable resolution to the Chief Executive Officer of Manufacturer and to Representative. . . . If they do not reach a solution within a period of sixty (60) days, then upon notice by either party to the other, such dispute, claim, question or disagreement shall be finally settled by arbitration in accordance with the provisions of the commercial dispute resolution rules of the American Arbitration Association. The Arbitrator . . . shall have the power to award any and all remedies and relief whatsoever that is deemed appropriate under the circumstances, including, but not limited to, money damages and injunctive relief. Both parties hereby waive any right to a jury trial.

(MRA ¶ 12(a) (Dkt. No. 18 at 15).)

ORDER - 2

In addition, the "DISPUTES" section contained a choice of law provision, which provided that: "This Agreement shall be governed by, interpreted, and construed in accordance with, the substantive laws of the State of Illinois." (*Id.* ¶ 12(b).)

Plaintiff was unwilling to sign the MRA as proposed by Defendant. (Allbaugh Decl. ¶ 16 (Dkt. No. 23).) On June 29, 2007, Plaintiff's attorney sent a letter to Defendant's attorney, stating that despite some concerns, Plaintiff was willing to sign the MRA if three provisions were added to the agreement:

> First, that the agreement does not waive or release any claims against PermaBound arising prior to the execution of the Agreement; Secondly, . . . that the inducement language be clarified by adding . . . : "The parties expressly affirm that the Representative has been informed that failure to sign the Agreement will result in the termination of Representative's right to sell and distribute products of the Manufacturer." Finally, that . . . both parties will have the right to terminate the Agreement for any reason and the Representative will be entitled to receive compensation / commission for all commissions payable and accrued under paragraph 5(b) on the last day of the month prior to the effective date of termination.

(6/29/07 Gay Letter (Dkt. No. 18 at 6).) Defendant agreed to make those changes to the MRA. In the "DISPUTES" section, a third provision was added: "This agreement does not waive or release any claims of any party to the Agreement that pre-exist the effective date of this Agreement." (MRA ¶ 12(c) (Dkt. No. 18 at 15).) Thereafter, on July 25, 2007, Plaintiff signed the MRA. (Dkt. No. 18 at 17.) However, Plaintiff also affixed to the contract a letter to Orr, dated the same day, stating, in pertinent part, "I feel as if I am signing under duress. I do not think the agreement is fair, but am signing to protect my employment." (7/25/07 Allbaugh Letter (Dkt. No. 18 at 18); Young Decl. ¶ 6 (Dkt. No. 18 at 2).)

On January 16, 2008, Defendant notified Plaintiff that it would not renew the MRA, which expired December 31, 2007. (1/16/08 Smith Letter (Dkt. No. 18 at 19).) The notification letter

ORDER - 3

stated that Plaintiff would nevertheless be paid for business in her territory for January and February 2008. (*Id.*)

Plaintiff initiated this case on November 26, 2008, seeking a declaratory judgment, equitable relief, and money damages for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; the Washington Law Against Discrimination ("WLAD"), WASH. REV. CODE § 49.60, *et seq.*; Washington's wage and hour statutes, WASH. REV. CODE §§ 49.52, 49.48 , 49.46, 49.12; and also bringing claims for negligent infliction of emotional distress and termination in contravention of Washington state public policy. (Am. Compl. 1–2 (Dkt. No. 6).) She alleges, in part, that Defendant discriminated against her because of her age and gender and terminated her in retaliation for engaging in protected activity. (*Id.* at 2.) Nowhere in the Complaint does Plaintiff mention or expressly challenge the MRA. However, she impliedly challenges the MRA in that she asserts that she was "misclassified," presumably as an independent contractor, as opposed to an employee, and was thereby denied overtime wages. (*Id.* ¶ 23.)

Soon after the Court set a trial date, Defendant Perma-Bound filed the instant motion to compel arbitration pursuant to the dispute resolution provision of the MRA. (Dkt. No. 17.) Defendant argues that Plaintiff entered into a valid agreement to arbitrate, and that the arbitration provision encompasses this dispute. (Mot. 4–8 (Dkt. No. 17).) As such, Defendant argues, the Court should stay the litigation in its entirety until the arbitration has been completed. (*Id.* at 8; Reply 11 (Dkt. No. 29).)

Plaintiff objects to the motion, arguing that a valid agreement to arbitrate does not exist and that the arbitration provision does not embrace the dispute at issue. (Resp. 7–8 (Dkt. No. 22 at 8–

ORDER - 4

9).) In particular, Plaintiff argues that the MRA is unenforceable for lack of consideration. (*Id.* at 7.) She also argues that the arbitration provision is unconscionable. (*Id.*) Alternatively, Plaintiff argues that even if the arbitration provision is valid, it does not encompass the discrimination, wage, retaliation, or unlawful termination claims because (1) the MRA expired before she was terminated and filed this lawsuit, (2) the arbitration provision does not cover claims that arose before she signed the MRA, and (3) not all of her claims "arise out of or relate" to the MRA. (*Id.* at 15–23.)

The Court will address these arguments, in turn, below.

## II. APPLICABLE LAW

"Generally, the question of whether a dispute is arbitrable is decided by the courts." *United Bhd. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996) (explaining that "where the parties clearly and unmistakably provide otherwise, the courts will be divested of their authority and an arbitrator will decide in the first instance whether a dispute is arbitrable"). "Where, as here, a party attempts to litigate claims covered by a commercial contract containing an arbitration agreement subject to the FAA, the court must determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) (*quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

"In determining whether parties have agreed to arbitrate a dispute, we apply 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1043 (9th Cir. 2009) (*quoting Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). Additionally, "[a]n arbitration agreement

governed by the Federal Arbitration Act is presumed to be valid and enforceable." *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008); *see also* 9 U.S.C. § 2 ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). As such, "[t]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Hoffman*, 546 F.3d at 1082 (*quoting Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

### III. DISCUSSION

#### A. Enforceability of the MRA's Arbitration Provision

Defendant argues first that the MRA's arbitration provision is valid. (Mot. 4 (Dkt. No. 17).) In response, Plaintiff challenges the validity of the MRA in its entirety and argues that its arbitration provision is substantively unconscionable and therefore unenforceable. "In analyzing whether an arbitration agreement is valid and enforceable, 'generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1268 (9th Cir. 2006) (*quoting Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

However, as a preliminary matter, the Court must determine which state's substantive contract law to apply to these arguments. *See Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001) (explaining that before assessing the viability of a state law defense of unconscionability raised in response to a motion to compel arbitration, the court must determine which state's law applies). The parties seem to assume that Washington's substantive law would apply, notwithstanding the MRA's provision that the agreement "shall be governed by, interpreted,

and construed in accordance with, the substantive laws of the State of Illinois." (MRA ¶ 12(b) (Dkt. No. 18).) Neither party has explicitly addressed this choice of law issue; however, Plaintiff argues that the choice of law provision is substantively unconscionable as a means to invalidate the arbitration agreement. Her arguments are pertinent to the choice of law analysis.

### 1. Choice of Law

If this were a diversity case, the Court would apply the choice of law rules of the forum state in which the Court is located. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). However, federal jurisdiction over the instant case is based on federal question jurisdiction. "Federal common law applies to choice-of-law determinations in cases based on federal question jurisdiction." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997) (*citing Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991)). "Federal common law follows the approach of the Restatement (Second) of Conflicts of Laws." *Id*. "Under the Restatement, courts should enforce the parties' choice of law if the issue 'is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.'" *Id*. (*quoting* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 187(1) (1988)). "Even if the parties could not have directed a contractual provision to the issue, courts should honor their choice unless . . . 'application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue' and that state would be the state of applicable law in the absence of a choice-of-law clause." *Id*. (*citing* § 187(2)).

"The first step of the analysis under section 187 is to determine whether the contractual parties could have resolved the particular issue being litigated by an explicit provision in the contract." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 923 (6th Cir.

ORDER - 7

2006). The Court finds that the MRA could not have contained an express provision addressing whether Plaintiff is entitled to overtime wages and benefits notwithstanding her formal classification as an independent contractor, because under both Illinois law and Washington law, "[a] court must look beyond labels to the realities of the relationship" in determining whether a worker is an independent contractor or an employee. *Warren v. Williams*, 730 N.E.2d 512, 518 (Ill. App. Ct. 2000); *see also Netzel v. Indus. Comm'n*, 676 N.E.2d 270, 272, 274 (Ill. App. Ct. 1997) (finding that a nurse was an employee notwithstanding a contract provision stating that she was self-employed); *Hollingbery v. Dunn*, 411 P.2d 431, 435 (Wash. 1966) (explaining that whether one performs services as an employee or as an independent contractor depends upon numerous factors included in the Restatement (Second) of Agency section 220). In addition, the Court is at a loss in imagining how the parties could have resolved Plaintiff's discrimination claims by an explicit provision in the MRA.

Therefore, the Court proceeds to the second step of the section 187 analysis. The choice of law provision will still be upheld "unless . . . 'application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue' and that state would be the state of applicable law in the absence of a choice-of-law clause." *Chan*, 123 F.3d at 1297 (*citing* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 187(2)).

### a. State of Applicable Law

In determining which state's law would be applicable in the absence of an enforceable choice of law provision, the Court considers the following factors: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject

matter of the contract, and (5) the residence of the parties. *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188.

### i. The Place of Contracting

The place of contracting is the place where the last act necessary to give the contract binding effect occurred. RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188 cmt. e. The last act necessary to make the MRA binding was Plaintiff's acceptance—her signing of the contract—which presumably occurred in the state where she lived, Washington. Therefore, this factor favors Washington.

### ii. The Place of Negotiation

It appears that the parties negotiated the MRA by mail, through Plaintiff's attorney in Bellevue, Washington, and Defendant's attorney in St. Louis, Missouri. (6/29/07 Gay letter (Dkt. No. 18 at 5).) Therefore, this factor is neutral as between Washington and Missouri.

### iii. Place of Performance

Plaintiff performed her obligations under the MRA in Washington, while Defendant performed its obligations in the State of Illinois. Therefore, this factor is neutral as between Washington and Illinois.

### iv. Location of the Subject Matter of the Contract

The MRA specifies that Plaintiff's "Territory" was to be the area specifically described in an attachment to the MRA. (MRA ¶ 1(b) (Dkt. No. 18 at 7).) Although the attachment was not submitted for the Court's review, it appears that Plaintiff's territory was in Washington State, and that the MRA contemplated this location in its subject matter. The Court therefore finds that this factor favors Washington.

//

ORDER - 9

### v. Residence of the Parties

Plaintiff resides in Washington; Defendant resides in Illinois. Therefore, this factor is neutral as between Washington and Illinois.

The five-factor test shows that Washington, on balance, has a more significant relationship to the MRA and the parties than does Illinois or Missouri. The Court therefore finds it appropriate to apply Washington law, absent a valid choice of law provision by the parties.

### b. Fundamental Policy of Washington

The Court must next determine whether application of Illinois law would be contrary to a fundamental policy of Washington. Plaintiff argues that the choice of law clause is unenforceable because applying Illinois law to her wage and discrimination claims would "both undermine Washington state policy and erroneously permit Illinois to determine issues that Washington has a materially greater interest in, as the issues directly affect Washington State citizens." (Resp. 12 (Dkt. No. 22 at 13).) In particular, she contends that her statutory cause of action for wrongful discharge—a cause of action that is based on Washington's public policy principles—would be extinguished under Illinois law. (*Id*. at 12–13.) She argues that under Illinois law, retaliatory discharge actions are permitted only in two narrow settings not applicable to her. (*Id*. at 13.) In addition, she contends that if Illinois law applies to her discrimination claims, then "many of the discriminatory acts [she] is complaining of appear to be stale under Illinois's 180 day, or six month statute of limitations." (*Id*. at 14.) In contrast, the WLAD provides for a three-year statute of limitations. (*Id*.) As such, she argues, the choice of law provision is unenforceable in Washington because the Washington Supreme Court has held that a 180-day limitations provision unreasonably favors employers and is therefore substantively unconscionable.

The Court finds Plaintiff's arguments persuasive to the extent that application of Illinois law to her wage and discrimination claims would appear to violate strong public policy of Washington. First, under Illinois law, retaliatory discharge actions are allowed in only "two settings: (1) when an employee is discharged for filing, or in anticipation of the filing of, a claim under the Workers' Compensation Act; and (2) when an employee is discharged in retaliation for reporting illegal or improper conduct by the employer, otherwise known as 'whistle-blowing.'" *Chicago Commons Ass'n v. Hancock*, 804 N.E.2d 703, 705 (Ill. App. Ct. 2004) (internal citation omitted). Plaintiff concedes that neither of these situations applies to her. Washington, however, recognizes a tort of wrongful discharge based on a clearly articulated public policy against sex discrimination in employment. *Roberts v. Dudley*, 993 P.2d 901, 911 (Wash. 2000). In addition, Washington "prohibits employer retaliation against employees who assert wage claims, and [Washington courts] have held employers who engage in such retaliation liable in tort for violation of public policy under [Wash. Rev. Code § 49.46.100]." *Hume v. Am. Disposal Co.*, 880 P.2d 988, 991 (Wash. 1994) (recognizing "a clear legislative expression condemning retaliation by an employer against an employee who asserts a claim for overtime pay as contrary to the public interest"). Therefore, application of Illinois law, which would extinguish Plaintiff's ability to pursue her claim for retaliatory discharge, would violate Washington public policy to protect employees who assert overtime claims.

Further, under Illinois law, Plaintiff's discrimination claims would be subject to a 180-day statute of limitations. *See* 775 Ill. Comp. Stat. 5/7A-102 (2008). By contrast, the applicable statute of limitations for bringing employment gender discrimination claims pursuant to WLAD is three years. *See Antonius v. King County*, 103 P.3d 729, 732 (Wash. 2004) (explaining that, though WLAD does not contain its own limitations period, the general three-year statute of limitations for

ORDER - 11

personal injury actions applies). Additionally, in Washington, a contractual statute of limitations provision will not be enforced if it is prohibited by public policy or is unreasonable. *See Adler v. Fred Lind Manor*, 103 P.3d 773, 787 (Wash. 2004). The Washington Supreme Court has refused to uphold a 180-day limitations period on discrimination claims in an arbitration agreement, explaining that by so limiting an employee's ability to timely pursue his rights, an employer obtains unfair advantages. *Id*. Given Washington's clear public policy of protecting employees from workplace sexual discrimination as codified in the WLAD, the Court finds that application of Illinois law to prevent Plaintiff from pursuing discrimination claims that would be valid under Washington law would violate Washington public policy.

The Court must now determine whether Washington has a materially greater interest than Illinois in the outcome of this dispute.

### c. Materially Greater Interest

The Court finds that Washington has a materially greater interest than Illinois in determining the enforceability of the arbitration clause. Plaintiff invokes Washington anti-discrimination and wage statutes—laws which, as discussed above, are rooted in Washington public policy concerns. Illinois' interest, by contrast, is limited to enforcement of contractual provisions made by one of its corporate citizens. As discussed in Part III.A(1)(a) above, Washington has a significantly greater relationship to the contract and the parties than does Illinois, especially given that Plaintiff is a Washington resident; she signed the contract at issue in Washington; and the contract purported to define the terms of an economic relationship involving services Plaintiff was to perform solely in Washington. *See, e.g.*, *King v. PA Consulting Group, Inc.*, 485 F.3d 577, 585–86 (10th Cir. 2007) (holding that Colorado had a materially greater interest than the chosen state, New Jersey, home of the corporate defendant, in determining

whether noncompete restrictions in an agreement were enforceable where Plaintiff was a resident of Colorado, he signed the contract there, and his sole place of work was Colorado).

Accordingly, the Court will apply Washington law to determine the arbitration agreement's enforceability.

### 2. Contract Defenses

In opposition to Defendant's motion to compel arbitration, Plaintiff contends (1) that the MRA is unenforceable for lack of consideration, and (2) that the dispute resolution provision of the MRA is substantively unconscionable. (Resp. 8–15 (Dkt. No. 22 at 9–16).) The Court will now address each of these arguments.

#### a. Lack of Consideration

Plaintiff argues that the MRA *in its entirety* is invalid and unenforceable for lack of consideration. (*Id*. at 8–11.) The Supreme Court has held that "in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Expanding on this holding, the Supreme Court later held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006). The Ninth Circuit has construed this holding to mean that "[i]ssues regarding the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the existence of a contract as a whole must be determined by the court prior to ordering arbitration." *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007). In particular, the Ninth Circuit has held that contract formation issues should be resolved by the district court, rather than the arbitrator. *Id*. Plaintiff's argument that

consideration was lacking such that the contract was never validly formed goes to the existence of the contract as a whole. Therefore, the Court must resolve this issue rather than referring it to the arbitrator.

Plaintiff argues that "there is no consideration for the formation of a valid contract when the contract is signed by an employee, after she was hired and when the employee was offered no other additional benefits or promises by his [sic] employer." (Resp. 8–9 (Dkt. No. 22 at 9–10).) However, the Court finds this argument unavailing. "Consideration is 'any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange.'" *Labriola v. Pollard Group, Inc.*, 100 P.3d 791, 793 (Wash. 2004) (stating also that "[c]onsideration is a bargained-for exchange of promises"). The arbitration agreement contains an exchange of promises such that both parties for the first time agreed to waive their right to a jury trial to resolve disputes between them arising out of or relating to the MRA or its breach, termination, or invalidity. (*See* MRA ¶ 12(a) (Dkt. No. 18 at 15).) After consultation with her attorney and some negotiations, Plaintiff signed the agreement, thereby agreeing to give up her right to a jury trial in exchange for Defendant's identical promise. As such, consideration was not lacking to support the arbitration agreement.

### b. Substantive Unconscionability

Plaintiff next argues that the arbitration agreement is invalid because, applying Washington law, the arbitration provision is substantively unconscionable.[1] (Resp. 11 (Dkt. No. 22 at 12).) "Substantive unconscionability involves those cases where a clause or term in the contract is

---

[1] Plaintiff expressly states that she does not challenge the *procedural* unconscionability of the arbitration provision. (Resp. 11 (Dkt. No. 22 at 12).) However, "[s]ubstantive unconscionability alone is sufficient to support a finding of unconscionability." *McKee v. AT&T Corp.*, 191 P.3d 845, 857 (Wash. 2008) (*citing Adler*, 103 P.3d at 782).

alleged to be one-sided or overly harsh[.]" *Adler*, 103 P.3d at 781 (internal quotations and citation omitted). "'Shocking to the conscience', 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Id*. (*quoting Nelson v. McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995)). Under Washington law, "[a] provision in an arbitration agreement may be substantively unconscionable if it effectively undermines an employee's ability to vindicate his statutory rights." *Walters v. A.A.A. Waterproofing, Inc.*, 211 P.3d 454, 458 (Wash. Ct. App. 2009) (citation omitted); *see also Torgerson v. One Lincoln Tower, LLC*, 210 P.3d 318, 323 (Wash. 2009) ("A clause that unilaterally and severely limits the remedies of only one side is substantively unconscionable under Washington law for denying any meaningful remedy.") (*quoting Scott v. Cingular Wireless*, 161 P.3d 1000, 1008 (Wash. 2007)). However, the Washington Supreme Court has also held that courts may sever substantively unconscionable provisions in employment arbitration agreements and enforce the remainder of the agreement to arbitrate. *Adler*, 103 P.3d at 788.

  Plaintiff contends that the arbitration provision is substantively unconscionable under Washington law because it attempts to subject Plaintiff's claims to Illinois law, which, as discussed in Part III.A(1)(b), provides less protection to Plaintiff than Washington law and "strips [Plaintiff] of her claims" in some significant respects. (Resp. 12 (Dkt. No. 22 at 13).) Because the Court finds that the choice of law provision in the "DISPUTES" section of the MRA severely limits Plaintiff's remedies and effectively undermines her ability to vindicate her statutory rights, the Court finds that the choice of law provision is substantively unconscionable under Washington law.

  Ultimately, however, this conclusion does not preclude the Court from directing the parties to proceed to arbitration. Even if the choice of law provision is unconscionable, it may be severed,

leaving intact the agreement to arbitrate. *Adler*, 103 P.3d at 788 (holding that an unconscionable clause in an employment arbitration agreement should be severed so that the remainder of the agreement to arbitrate may be enforced). In addition, a "court will declare the entire arbitration agreement unenforceable only when unconscionable provisions are pervasive." *Walters*, 211 P.3d at 462 (*quoting Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 768 (Wash. 2004)).

In this case, the MRA expressly provides that "[i]n the event that any of the terms of this [MRA] are . . . unenforceable under the laws or regulations of any government or subdivision thereof, such terms shall be deemed stricken from this Agreement, but such . . . unenforceability shall not invalidate any of the other terms of this Agreement[.]" (MRA ¶ 13(f) (Dkt. No. 18 at 16).) Washington courts recognize that "[s]everability is particularly likely when," as here, "the agreement includes a severability clause." *Walters*, 211 P.3d at 462.

The Court finds that the substantive unconscionability of the choice of law provision does not pervade the entire arbitration agreement. If the arbitrator were to apply Washington law instead of Illinois law, all of Plaintiff's concerns regarding the substantive unconscionability of the arbitration clause would be moot. There is no allegation that the agreement to arbitrate itself is substantively unconscionable; rather, the arbitration clause imposes mutual obligations upon Plaintiff and Defendant, and the Court cannot characterize it as one-sided or overly harsh. In sum, the Court finds no basis for concluding that the arbitration provision itself, as contained in MRA ¶ 12(a), is substantively unconscionable.

**B. Scope of the MRA's Arbitration Provision**

Having concluded that there is a valid agreement to arbitrate, the Court must now determine whether the agreement to arbitrate encompasses the dispute at issue. *Lowden,* 512 F.3d at 1217 (*quoting Chiron*, 207 F.3d at 1130). Defendant asserts that "Section 12(a) of the MRA

ORDER - 16

plainly encompasses the dispute" in this case because the dispute involves the economic relationship between Plaintiff and Defendant and the "MRA *is* the economic relationship between the parties." (Reply 5 (Dkt. No. 29).) Plaintiff argues that the parties' agreement to arbitrate does not encompass the dispute in this case because (1) the MRA expired before she was terminated and filed this lawsuit, (2) the arbitration provision does not cover claims that arose before she signed the MRA, and (3) not all of her claims "arise out of or relate" to the MRA. (Resp. 15–23 (Dkt. No. 22 at 16–24).)

As a general proposition, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (*quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)). Broad arbitration clauses, including phrases like "'any dispute arising out of this Agreement,' ordinarily require[] [the court] to hold that the parties have provided for arbitration of disputes regarding termination[.]" *Camping Constr. Co v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1339 (9th Cir. 1990). The Ninth Circuit has held that an arbitration clause containing the phrase "'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract[.]" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("To require arbitration, [a plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.").

The arbitration clause in the instant case is even broader than the foregoing examples. It applies to "[a]ny dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof." (MRA ¶ 12(a) (Dkt. No. 18 at 15).) The Court finds that

ORDER - 17

Plaintiff's claims, which concern her termination and the terms of the economic relationship she had with Defendant, whether as an independent contractor or an employee, are claims or disputes "arising out of or relating to" the MRA or its termination or invalidity. (Am. Compl. (Dkt. No. 6).) The MRA purported to clarify Plaintiff's status as an independent contractor rather than an employee, (MRA ¶ 13(a) (Dkt. No. 18 at 15)), thereby determining whether Plaintiff was entitled to the wage and hour benefits for which she now seeks recovery. Whether such agreement was valid is expressly an issue the parties agreed to resolve through arbitration rather than the courts. (*Id*. ¶ 12(a).) The MRA also purported to "represent[] the entire understanding of the parties with respect to its subject matter and supersede[] all previous agreements" between them. (*Id*. ¶ 13(d).) As such, by agreement, Plaintiff had no economic relationship with Defendant except through the MRA. Again, whether such agreement was valid is an issue the parties agreed to arbitrate. While not all of Plaintiff's claims necessarily "arise out of" the Agreement, such as her discrimination claims, there is no doubt that at a minimum, they all *relate to* her economic relationship with Defendant pursuant to the MRA and the termination of such relationship.

      The Court is not persuaded by Plaintiff's argument that the arbitration provision does not apply to claims that arose before the effective date of the MRA. (Resp. 17 (Dkt. No. 22 at 18).) Based on Plaintiff's own attorney's language, the MRA provides that the agreement does not "waive or release" any claims that "pre-exist the effective date" of the MRA. (MRA ¶ 12(c) (Dkt. No. 18).) However, the MRA says nothing about preserving the parties' rights to pursue a jury trial as to those claims or exempting them from the application of the arbitration provision, which broadly covers not just any claims arising under the MRA but also any claims relating to it. The MRA, by its terms, represented the entire understanding between the parties regarding Plaintiff's economic relationship with Defendant. By signing the MRA, Plaintiff agreed to be bound to

arbitrate any claims that relate to her economic relationship with Defendant, regardless of when the underlying events occurred. *See, e.g.*, *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (finding that a broad arbitration agreement covering not just claims arising under the agreement itself applied to claims that concerned events occurring before the parties executed the agreement); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 407 (S.D.N.Y. 2003) (finding that an arbitration clause covering "[a]ny dispute, claim, or controversy . . . arising out of or relating to this Agreement, your Account, or the validity or scope of any provision of this Agreement" was broad enough to include claims that the plaintiff had prior to entering the agreement).

Nor is the Court persuaded that the expiration of the MRA on December 31, 2007, relieved Plaintiff of her obligation to arbitrate, rather than litigate, her claims. The Supreme Court has held that "where the dispute is over a provision of [an] expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 255 (1977); *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998) ("Under the federal law of arbitrability, an arbitration provision in a contract is presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption[.]"). Plaintiff expressly agreed to arbitrate any dispute relating to the termination of the MRA; this clause would be rendered meaningless if the termination of the MRA dissolved the agreement to arbitrate disputes related to termination. In construing a contract, "[c]ourts should not adopt a contract interpretation that renders a term ineffective or meaningless." *Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 209 P.3d 863, 871 (Wash. 2009) (*citing Wagner v. Wagner*, 621 P.2d 1279, 1283 (Wash. 1980)). Plaintiff's challenge to her termination, which was

purportedly accomplished when Defendant notified Plaintiff that it would not renew the MRA, appears to be a dispute relating to the termination of the MRA. (1/16/08 Termination Letter (Dkt. No. 18 at 19).)

In sum, the Court cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at 650. Given the strong policy favoring arbitration agreements, the Court finds that Plaintiff's claims are encompassed by the arbitration provision.[2]

Accordingly, the Court severs the choice of law provision from section 12 of the MRA but otherwise enforces the parties' agreement to arbitrate.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant Perma-Bound's Motion to Compel Arbitration (Dkt. No. 17). As such, Defendant's Motion for a Protective Order (Dkt. No. 47) is hereby DENIED as MOOT. In addition, this case is STAYED in its entirety and removed from the Court's active case load pending arbitration.

DATED this 14th day of August, 2009.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiff filed a surreply, both requesting that the Court strike certain assertions and arguments in Defendant's Reply brief and also responding further to Defendant's arguments. (Dkt. No. 37.) The Court declines to strike the challenged material because its decision today does not depend upon that material and because the Court finds Defendant's arguments to be properly presented in reply to Plaintiff's Response.

ORDER - 20